Sunday Iyoha VS. Architect Of The Capitol

Case: 1:24-cv-02831
Assigned To : Kelly, Timothy J.
Assign. Date : 10/4/2024
Description: Pro Se Gen. Civ. (F-DECK)

### Sunday Iyoha (Plaintiff)

### VS.

### Architect Of Capitol (Defendant)

### Breach Of OCWR Global Settlement Agreement.

I am filling this case in view of the agency, the Architect of The Capitol (AOC) continued discrimination and retaliation against Mr. Iyoha, as evidenced by their breach of a fully signed office of congressional workplace rights (OCWR), settlement agreement executed on 4/30/24, which the Architect of the Capitol has refused to execute, stating that the agency made a mistake in one of the agreed to provisions, which states that Mr. Iyoha as a result of the global settlement reached in OCWR cases 23-AC-50 and 23-AC-51, would get a raise to a GS 14 step 10, along with priority consideration for any available GS 15 positions that he is qualified for.

This settlement agreement was reached after over two months of an OCWR mediator led discussion and several drafts/changes initiated by the AOC and yet they claim they made a mistake that was not caught by the agency throughout the period and even for a considerable amount of time afterwards (40 days).

This agreement was drafted by the agency and was vetted by all relevant agency parties i.e. head of human resources, Chief information Officer and their boss the chief administrative officer

I Mr. Iyoha am a black male of African/ Nigerian descent who speaks with an accent identifiable with people from the same region of the world, who for almost 17 years has worked for the Architect of the Capitol in the Information technology department.

I Mr. Sunday Iyoha also now have new managers who directly worked for, were mentored by and still are close friends with the two managers (Jay Weigman and Angela Clark) who multiple times, were found to have discriminated against me because of my accent and national origin.

It is no coincidence that the new management, comprising of deputy chief information officer (DCIO) Stephanie Faison, who was previously my branch chief and was involved and aware of my last settlement agreement in federal court, have refused as a sign of renewed discrimination and retaliation to honor the OCWR settlement agreement.

RECEIVED
OCT - 4 2024
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Sunday Iyoha VS. Architect Of The Capitol

Stephanie Faison was my last supervisor. She was involved in my last settlement (2015 non selection). As is true in this last case with the DCIO position, she was the one who was promised and got both the branch chief position and the DCIO position, (she left for a while to the US Capitol Police for a couple of years) and is now back as the DCIO, a position which Mr. Iyoha, was denied and which formed part of the basis of his OCWR complaint. Now she is in the management chain and in a position to retaliate against him by effecting a breach in the settlement.

Stephanie Faison was involved in Mr. Iyoha's settlement with the AOC as branch chief, she helped write the position description for the Customer Service Improvement Program Manager (CSIPM) position, which Mr. Iyoha currently holds and she served as his first line supervisor, she left her successor with indications that his rating should be lowered Mr. Iyoha contested this using objective criteria given for each element and after due consideration of the facts he was given the highest rating of "outstanding", which he maintained until this most recent attempt to again lower his evaluation under the pretext of a new five tier rating system. One of the provisions of the settlement agreement executed on 4/30/24 was supposed to raise his evaluation to the second highest rating as opposed to the third where he was lowered to, with a step increase to a GS 14 step 9 and for the non-selection case he was supposed to get priority consideration for GS 15 jobs with another step to step 10.

She has shown on her coming back to the AOC and becoming the deputy CIO and my third line supervisor a propensity to flout the rules as well as retaliate against me, as the email below which Mr. Iyoha sent to both her and my first line supervisor exemplifies:

"From: Iyoha, Sunday

Sent: Thursday, June 13, 2024 11:34 AM

To: Simmonds, Duval O. &lt;Duval.Simmonds@aoc.gov&gt;

Cc: Faison, Stephanie &lt;stephanie.faison@aoc.gov&gt;

Subject: Addressing Roles

Duval,

I know I had discussed with you Rob Collins crossing over to doing things that are supposed to be done by the service desk.

Since the incident where Rob facilitated Stefanie Faison's login which enabled her to be able to get on the network and send emails before her start date, I have also received reports of her reaching out to Rob on different issues which have to do with the service desk and Rob in turn tasking the service desk to resolve these issues.

I am a little confused as to my role at times and if I will ever be allowed to do it, this feels like the continuation of what I experienced during the Jay and Angie era.(not that I expected anything different)

Thanks

Sunday I. Iyoha,

*[signature: Sunday Iyoha]*   14205 WATER FOWL WAY, UPPER MARLBORO, MD, 20774

Sunday Iyoha VS. Architect Of The Capitol

Customer Service Improvement Program Manager

CHDM, SCD, ITIL, MCP

For some historical context as to why Stephanie Faison and Bob Bell the CIO (AC-23-50/51) have discriminatory and retaliatory animus towards me.

In my last OCWR case in 2014/15, in which I opted to take to federal court and AOC ultimately settled. It was a case ( in the last itineration of it) where Stephanie Faison, had already been installed as acting branch chief with the express approval of Jay Weigman and Angela Clark(who were judged to have discriminated against Mr. Iyoha, by an OCWR finding and found to have discriminated against me in the non-selection by three judge panel of the appeals court, Stephanie Faison was the beneficiary of my non selection) to make her the permanent branch chief which they eventually did even though I had more experience and technical knowledge than Stephanie Faison did, by organizing a second sham interview, in which she was chosen.

She then left for the US Capitol Police, for some time, when the DCIO position became vacant I applied for the position, and I was reliably informed that she had applied for it too. This time around even though I have about 25 years of IT experience the AOC HR off the back deemed me ineligible to be considered for an interview and MS Stephanie Faison, was again given the job.

As a byproduct of her new found authority over me according to information and belief she and the new CAO who were not parties or signatories to my settlement agreement Chris Potter previous CAO signed the agreement), have refused to honor the duly signed settlement agreement choosing rather to breach it.

Stephanie Faison, by virtue of her new position would also be the approver on my future evaluation along with Bob Bell who also worked for and claims Jay Weigman and Angela Clark as mentors and friends.

Mr. Iyoha was reliably informed and believes that the AOC was always aware of the fact that OCWR does not have actual enforcement mechanisms to make AOC honor its agreement and that's why he is filling in federal court.

Bob Bell: as detailed already Bob Bell is the new CIO who in his previous role as a contractor program manager was deposed in Mr. Iyoha's first/second discrimination suit against the AOC at the OCWR. In his new role as Mr. Iyoha's third line supervisor, he in coordination with his deputy lowered my yearly rating and according to information and belief was involved in my non selection for the deputy CIO position, he has since boasted about having Stephanie Faison filling this role. This formed the basis of OCWR case AC 50 and OCWR case 51, which has now been breached by the agency since 4/30/24.

Telora Dean: she is the new chief administrative officer and my fourth line supervisor. A simple internet search would reveal that MS Dean has been involved in her previous agency (Department of Agriculture) in helping as part of a coordinated effort to retaliate against someone who has engaged in protected activity as for instance in the case of, Rosetta B. Davis vs Sonny Perdue secretary of the US department of Agriculture.

Sunday Iyoha VS. Architect Of The Capitol

From this an inference can be made that her refusal to honor a settlement agreement crafted, vetted and fully signed by her predecessor is evidence of retaliation and discrimination against Mr Iyoha.

Her predecessor was the one who signed the settlement agreement which according to information and belief she has refused to honor It is worthy of note at this point that since there is a confidentiality clause attached to the settlement agreement(Bob Bell CIO and Teresa Bailey CHCO were involved in the crafting vetting of the settlement agreement) this two new managers MS Dean and Stephanie Faison should not be involved in refusing to let AOC and its agents execute on an agreement that was dully signed thereby constituting not just a breach but further evidence of retaliation and discrimination.

Teresa Bailey: she is the chief human capital officer for the AOC and has been for the duration of my ordeal at the agency. She and her department have been highly instrumental in enabling the discrimination and subsequent acts of retaliations as evidenced by my being moved from my initial position because I speak with an accent including multiple denials of promotions and coordinating with jurisdictions to cancel a cert which my name was on , creating a new one with the name of their favored candidate ( a white woman married to an employee who works in the same jurisdiction) Mrs. Bailey was also part of setting the settlement agreement which the agency has now breached.

The office of DIDR, which in an apparent act of retaliation, decided to revoke Mr. Iyoha' s reasonable accommodation (parking) after he refused to file a complaint with their office and filed with the OCWR instead. (this case was settled)

It is Mr. Iyoha' s contention that AOC continues to find new and novel ways to retaliate and discriminate against Mr. Iyoha as evidenced by this settlement breach. In 2012 the Office Of Compliance (now OCWR) decided in Mr. Iyoha's favor in his discrimination suit against the AOC. In 2014,2015, Mr. Iyoha had to file three discrimination suits at the OCWR, due to three non-selections for the same branch chief position, there was ultimately a global settlement reached in February 2020. Again in 2024 Mr. Iyoha had to file the case that is now been addressed in this breach case.

In doing a preliminary finding on both the breach of the settlement agreement for OCWR cases OCWR 23-AC-50/51 and Mr. Iyoha' s contention that this is further proof of continued discrimination. The OCWR (OCWR 24-AC-32, CV, RP) granted Mr. Iyoha 90 days to be able to file in federal court, in order to be able to enforce his settlement agreement and compel the AOC to enforce the agreement.

For several months now the AOC and its agents have refused either through in-action (because of OCWR inability to compel them) and by using different excuses and delay tactics, despite Mr. Iyoha's good faith effort to be conciliatory in trying to resolve this issue, have refused to execute this settlement agreement.

Sunday Iyoha VS. Architect Of The Capitol

**Remedies**

Through this action it is Mr. Iyoha's hope, the court will be able to enforce and use its authority (which the OCWR did not have) to get the AOC to honor and execute the dully signed settlement agreement which it entered with Mr. Iyoha starting from 4/30/24, with all retroactive pay and benefits deriving from the settlement, with court cost and whatever other penalties the court deems fit to access for the amount of time it has taken for Mr., Iyoha to seek redress. Also, any other penalties or cost that the court might deem fit to access against the AOC for the mental anguish, depression, anxiety and exacerbation of his myofascial pain as a result of the ordeal the AOC has put him through.

## **RELEVANT EMAILS**

**From:** Murray, Aisha <Aisha.Murray@aoc.gov>
**Sent:** Friday, June 7, 2024 1:14 PM

Sunday Iyoha VS. Architect Of The Capitol

**To:** Iyoha, Sunday <Sunday.Iyoha@aoc.gov>
**Subject:** RE: Status of settlement

Good afternoon!

Thanks for letting me know of this, I was not aware.

I have sent another inquiry to HCMD and requested they respond today with the process and anticipated effective dates re: personnel actions. I hope to get back to you very quickly on this.

Unfortunately, I cannot provide you with legal advice regarding the OCWR Procedural Rules. I can however, let you know that the AOC intends to effect the terms to which it has agreed in the settlement agreement.

Thank you.

Aisha

**Aisha Murray**

(Acting) Deputy General Counsel

Phone   (202) 593-1836

Fax     (202) 225-5927

Cell    (202) 841-7801

aisha.murray@aoc.gov

**Architect of the Capitol**

**Office of General Counsel**

Washington, DC  20515

www.aoc.gov

Sunday Iyoha VS. Architect Of The Capitol

Notice: Unless otherwise specifically indicated, the information in this e-mail is an attorney-client communication and/or attorney work product and is intended only for the review and use of the above-named recipient(s). If the reader of this e-mail is not the intended recipient, you are hereby notified that the sender does not waive any privilege accorded to this information, and the recipient is strictly prohibited from any use, storage, dissemination, distribution, or copying of this communication. If you have received this e-mail in error, please immediately notify me at the contact information listed above. Thank you.

**From:** Iyoha, Sunday <Sunday.Iyoha@aoc.gov>
**Sent:** Friday, June 7, 2024 10:30 AM
**To:** Murray, Aisha <Aisha.Murray@aoc.gov>
**Subject:** RE: Status of settlement

Good morning Aisha,

Trust all is well.

Its been about 40 days says the executive director signed the agreement (4/30/24) I have not seen any benefits accruing from the settlement, even my ratings have not been changed, nor have I received the $1,000.

At what point will the agency be in breach of this agreement? Section 9.03(e) is not very clear.

Thanks

**Sunday I. Iyoha,**

**Customer Service Improvement Program Manager**

**CHDM, SCD, ITIL, MCP**

**Architect of the Capitol**
**Information Technology Division**

Sunday Iyoha VS. Architect Of The Capitol

www.AOC.gov

Phone: 202.557.4263

**From:** Iyoha, Sunday
**Sent:** Wednesday, May 29, 2024 7:45 AM
**To:** Murray, Aisha <Aisha.Murray@aoc.gov>
**Subject:** RE: Status of settlement

Much appreciated.

Have a splendid day.

Thanks

**Sunday I. Iyoha,**

**Customer Service Improvement Program Manager**

**CHDM, SCD, ITIL, MCP**

**Architect of the Capitol**
**Information Technology Division**

www.AOC.gov

Phone: 202.557.4263

**From:** Murray, Aisha <Aisha.Murray@aoc.gov>
**Sent:** Wednesday, May 29, 2024 7:44 AM
**To:** Iyoha, Sunday <Sunday.Iyoha@aoc.gov>
**Subject:** Re: Status of settlement

Sunday Iyoha VS. Architect Of The Capitol

Good morning Mr Iyoha,

I hope that you are doing well. I apologize for not responding sooner to your earlier inquiries.

I have checked with Human Resources and your changes should be showing up shortly. And, yes the pay rise will be effective back to the date of the settlement agreement. I will try to get a date certain for you before the end of the week.

Thank you.

Aisha

On May 29, 2024, at 6:18 AM, Iyoha, Sunday <Sunday.Iyoha@aoc.gov> wrote:

Good Morning Aisha,

Trust all is well.

This is a follow up email to my first email as I did not get a response.

Its been about four weeks since the settlement agreement has been signed off on by the OCWR but none of what we agreed on has been implemented.

My ratings is still the same, my pay didn't change (OCWR had set the expectation of thirty days for the payment coming from the treasury)

Wasn't the start of the agreement/implementation of its provisions, supposed to be from the date of the OCWR sign off date?

Thanks

Sunday Iyoha VS. Architect Of The Capitol

**Sunday I. Iyoha,**

**Customer Service Improvement Program Manager**

**CHDM, SCD, ITIL, MCP**

**Architect of the Capitol**
**Information Technology Division**

www.AOC.gov

Phone:202.557.4263

**From:** Iyoha, Sunday
**Sent:** Friday, May 24, 2024 11:20 AM
**To:** Murray, Aisha <Aisha.Murray@aoc.gov>
**Subject:** Status of settlement

Good day Aisha,

I am writing to find out when I will see the terms of my settlement reflected in my pay? Since it was approved about three weeks ago by OCWR.

Thanks

**Sunday I. Iyoha,**

**Customer Service Improvement Program Manager**

**CHDM, SCD, ITIL, MCP**

**Architect of the Capitol**
**Information Technology Division**

www.AOC.gov

Phone:202.557.4263

**OFFICE OF CONGRESSIONAL WORKPLACE RIGHTS**
John Adams Building, Room LA 200
110 Second Street, S.E.
Washington, D.C. 20540-1999

| | |
|---|---|
| SUNDAY IYOHA )<br>CLAIMANT )<br> )<br>VS )<br> )<br>ARCHITECT OF THE CAPITOL )<br>RESPONDENT ) | OCWR Case Nos. 23-AC-50<br>23-AC-51 |

### CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Agreement and Release (Agreement) is entered into between Christopher Potter, Acting Chief Administrative Officer, on behalf of the Architect of the Capitol (AOC), and Mr. Sunday Iyoha (Claimant), (hereinafter jointly referred to as the "Parties"). The Parties voluntarily agree to enter into this Agreement to settle any and all matters relating to Mr. Iyoha's employment with the AOC.

In exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties voluntarily affirm and agree to the following:

1. Sunday Iyoha as referred to in this Agreement, includes Mr. Iyoha, his heirs, assigns, agents and attorneys.

2. The AOC, as referred to in this Agreement, means the Architect of the Capitol and its past, present and future subsidiaries, affiliates, successors, predecessors, assigns agents, and attorneys, past and present.

3. This Agreement covers all statutory, common law, constitutional and other claims in existence at the time of the signing of this agreement including without limitation, those relating to: discrimination on any basis (including age, gender, religion, race, sex, ethnicity and national origin (including claims of discrimination based on accent)); disparate rating of review/record; termination; genetic discrimination or disclosure of genetic information, family and medical leave; disability; suspension; termination; age; gender; hostile work environment; reprisal;

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

breach of any purported contracts or covenants, express or implied; defamation; misrepresentation; fraud; negligent or intentional infliction of emotional distress; any other tort theories or claims that may be brought under state, District of Columbia, or federal law, including without limitation, the CAA 2 U.S.C. §1301 *et seq.*, which references other anti-discrimination and employment statutes.

4. Mr. Iyoha agrees that the sole purpose of this Agreement is to resolve fully, finally and amicably all claims asserted, or claims that could have been asserted by Mr. Iyoha in connection with his employment with the AOC in OCWR Cases No. 23-AC-50, 23-AC-51; and any and all potential claims Mr. Iyoha could have brought related to any mid-year or rating of record regarding his work performance, or any application for employment he may have made with the AOC for any period prior to the approval of this Agreement.

5. Mr. Iyoha agrees that valuable consideration is a basis for this Agreement, which resolves and settles all claims that were or could have been raised by Mr. Iyoha against the AOC, its officers, employees, attorneys and agents, all persons acting by, through, under, or in concert, with them. The Parties agree that future claims or wrongs are not resolved or settled by this Agreement.

6. Mr. Iyoha agrees that if a charge, claim or suit is prosecuted in his name before any court or administrative agency, he waives his rights to pursue any such charge, claim or suit, and he agrees not to take part in that action and not to take any award of money or other damages from such claim or suit.

7. Mr. Iyoha agrees to completely and fully waive, release, discharge, and abandon any and all claims or causes of actions, of every kind, nature and description, whether presently known or unknown, that he has or may have against the AOC and/or its agents, servants, or employees, including the right to seek discovery in future litigation regarding the factual allegations of said claims or causes of action; or instituting or prosecuting any and all claims or causes of action that relate to, or result from, his employment with the AOC, or with respect to any event complained of by Mr. Iyoha, or that he could have complained of (including any claim regarding non-selections regarding applications of employment submitted by Mr. Iyoha for positions at the US Capitol Visitor Center and the Information Technology Division) occurring

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

on or before the effective date of this Settlement Agreement, **except** claims or causes of actions that cannot be waived under applicable law. Such waived, released, discharged, and abandoned claims include, but are not limited to, any claim or causes of action relating to or arising under the Title VII of the Civil Rights Act (such as discrimination based on age, religion, race, national origin, gender, sex or hostile work environment for any reason), the Age Discrimination in Employment Act of 1967, the American with Disabilities Act of 1990, the Family and Medical Leave Act, Federal Labor Relations Act, and the Genetic Information and Nondiscrimination Act, each as applied by the Congressional Accountability Act, as amended; or any other claim relating to his employment with the AOC.

 8. Mr. Iyoha understands that this Agreement does not waive any rights or claims that may arise in the future after the effective date of this document. In addition, he is satisfied that this Agreement provides valuable consideration in exchange for his agreement to, and execution of, this Agreement.

 9. Mr. Iyoha agrees that he will withdraw, with prejudice, OCWR Cases Nos. 23-AC-50 and 23-AC-51 at the Office of Congressional Workplace Rights. Mr. Iyoha shall submit his written withdrawal to the OCWR in conjunction with the filing of this Agreement at the OCWR for approval. The withdrawal will be effective upon the date of the Executive Director of the Office of Congressional Workplace Rights' (Executive Director) approval of this Agreement.

 10. Mr. Iyoha agrees not to institute or pursue, nor allow any third party, to institute or pursue on his behalf, any grievance, actions, charges, complaints, appeals, or other proceedings against the AOC or any of the AOC's past or present employees, officers, agents, or representatives with respect to any aspect of Mr. Iyoha's employment with the AOC, whether known or unknown to Mr. Iyoha, up to the effective date of this Agreement.

 11. The AOC agrees that Mr. Iyoha will be paid the lump sum amount of one thousand dollars ($1,000.00) (the "Payment"). This amount is the total payment in this case and is inclusive of all attorney fees and any other agreed payments between the Parties. The Parties understand that the Payment will be authorized by the OCWR; and will be made by wire transfer, direct deposit or by check from the U.S. Treasury, made payable to Mr. Sunday Iyoha in accordance with the account information that Mr. Iyoha will provide to the OCWR.

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

12. The Parties understand that the Payment will be paid without payroll deductions or withholding and that Mr. Iyoha will be responsible for any and all taxes that he is legally responsible to pay as a result of the Payment. Furthermore, the Parties understand that neither the AOC nor the OCWR will be responsible for the payment of taxes on the amount paid under this Agreement and that neither the AOC nor the OCWR make any representations, warranties or promises in this Agreement, or otherwise, concerning any tax treatment of the settlement payment set forth in paragraph 11. The Parties further understand that the Department of Treasury may offset the payment to Mr. Iyoha in accordance with law.

13. The AOC agrees that it will change Mr. Iyoha's annual performance review of 10/1/2023 to 12/31/2023 from a rating of "Achieves Standards" to a rating of "Exceeds Standards."

14. The AOC also agrees that it will provide a within grade step increase to Mr. Iyoha from a GS-14, Step 9 to a GS-14, Step 10, beginning on the effective date of this Agreement.

15. The AOC further agrees that for a period of one (1) year only, beginning on the effective date of this Agreement in 2024 and ending on the same date in 2025, Mr. Iyoha shall have priority consideration in interviewing for posted vacancies for detail and permanent positions at the AOC, for which he is qualified, that are at the GS-14 or GS-15 level, supervisory or non-supervisory; and that are open for application by all AOC employees and/or non-AOC employees (**Vacant Position**). Mr. Iyoha shall not have priority consideration in interviewing for posted vacancies that are announced as limited to application solely from employees of a specific shop, office or jurisdiction of the AOC. The process for "priority consideration in interviewing" will occur as follows:

> Mr. Iyoha will notify the Talent Acquisition Branch (TAB) of the Human Capital Management Division (HCMD) of his interest in a posted Vacant Position and provide them with his resume. TAB will assess Mr. Iyoha's qualifications for the position and notify him of the outcome (qualified or not qualified).
>
> If Mr. Iyoha is deemed qualified, TAB will provide Mr. Iyoha's resume to the selecting official for consideration, prior to providing the selecting official with resumes from the list of certified applicants for the position. The selecting official, or their delegee(s), will

consider Mr. Iyoha's resume and may choose to interview Mr. Iyoha prior to interviewing other candidates, or may place his name for participation in the interview process along with other candidates for the position. Mr. Iyoha will be contacted regarding an interview and/or selection or non-selection to a position in accord with the process determined by AOC policy.

Priority consideration in interviewing shall not be defined as Mr. Iyoha having a right to be selected for a position for which he has interviewed, or that the AOC is required to hire Mr. Iyoha to a position for which he has interviewed.

For the purpose of following standing AOC policy, if Mr. Iyoha is deemed qualified, he may be required to submit an application for the position, and may later be placed on the certificate of persons eligible to be interviewed for the position.

The TAB point of contact for the process defined above will be:

> Alfred Martin, Acting Chief
> Talent Acquisition Branch
> E-mail: Alfred.martin@aoc.gov

16. Mr. Iyoha and the AOC each voluntarily waive the right to assert existing claims, regardless of whether the party is aware of such claims, occurring up to the date of approval of this Agreement by the Executive Director.

17. The Parties agree that they will not institute any actions, causes of action (in law or in equity), suits, debts, liens, claims, demands, or charges in any state, the District of Columbia, or any federal court or administrative agency arising from, or attributable to, such claims.

18. The Parties acknowledge that the preparation of this Agreement was collaborative in nature, and so agree that any presumption or rule that an agreement is construed against its drafter shall not apply to the interpretation of this Agreement or any term or provision hereof.

19. Mr. Iyoha shall have 21 days, commencing on April 12, 2024 to consider the terms of this Agreement. If Mr. Iyoha chooses to sign this Agreement before this 21-day consideration period has elapsed, he acknowledges that he has decided to waive his right to the 21 day period and that his decision to accept such a shortening of the period is knowing and voluntary and has not been induced by any threat, promise, or other representation attributable to the AOC or its' employees or agents, including without limitation any threat to withdraw or alter

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

any of the terms hereof prior to the expiration of the 21-day consideration period. Mr. Iyoha has been advised to consult with an attorney prior to signing this Agreement.

20. Mr. Iyoha may revoke his agreement to this Agreement during the seven (7) calendar day period following his execution thereof. Such revocation must be in writing and signed by Mr. Iyoha, and delivered, by hand, to the Chief Human Capital Officer Teresa Bailey at Room H2-295 of the Ford House Office Building, 2nd and D Streets, S.W., Washington DC 20515, on or before the seventh day after Mr. Iyoha signs this Agreement.

21. By his signature below, Mr. Iyoha represents that any waiver he has made in this Agreement has been knowing and voluntary, and that he has been advised by the AOC to consult with an attorney prior to executing this Agreement.

22. By his signature below, Mr. Iyoha represents that: (i) the AOC has advised him to examine this Agreement and that he may consult with an attorney; (ii) he has reviewed and understands the terms of this Agreement; and (iii) he believes that the requirements set forth in 29 U.S.C. §626(f)(1)(A) - (G) have been fully satisfied in connection with this settlement agreement.

23. Neither party to this Agreement shall disparage the other Party or any other officer, employee, attorney or agent of the other Party, or any persons acting by, through, under, or in concert with, the other Party. This non-disparagement provision does not limit or restrict either party's ability to testify truthfully about any matters if the Party's testimony is compelled by a subpoena, court order or arbitrator's order.

24. The Parties, and all persons acting by, through, under, or in concert with them, release each other and the other's officers, employees, attorneys and agents, and all persons acting by through, under or in concert with them, from any and all claims, rights, demands, actions, obligations, and causes of action of any and every kind, nature and character, known or unknown, which they may now have, or ever had, against the other or the other's officers, employees, attorneys and agents, and all persons acting by, through, under, or in concert with them, arising from or in any way connected with the entire employment relationship between the Parties, and any actions during the relationship.

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

25. Mr. Iyoha acknowledges that he has read the entire Agreement and understands all its terms; that he is not executing this agreement in reliance on any promise, representation or inducement other than those contained in this Agreement; and he is voluntarily entering into this Agreement, free of any duress or coercion.

26. Mr. Iyoha acknowledges that the benefit he receives by entering into this Agreement is in addition to anything of value to which he is, or might otherwise be, entitled before entering into this Agreement.

27. The Parties agree that the terms of this Agreement, including all discussions and negotiations leading up its execution, are strictly confidential and may only be shared by the AOC on a need to know basis in order to effectuate the terms of this Agreement. The Parties may disclose the terms of this Agreement only to their respective counsel, as well as pursuant to any judicial order compelling such disclosure, or as may otherwise be required under law, or if necessary to enforce any provision in this Agreement or to defend any claims made hereunder. Further, each party may inform other individuals, upon inquiry, only that all matters have been resolved to the satisfaction of all the parties. Any failure of a party, its attorneys, or representatives to maintain the confidentiality of the existence or terms of this Agreement, except as provided here or required by law, shall constitute a material breach of this Agreement.

28. This Agreement is not to be construed as an admission of any wrongdoing or error by the AOC, nor shall it constitute a finding by the OCWR that the AOC, its agents, servants, or employees violated any laws or regulations.

29. The terms of this Agreement do not create any precedent nor establish any practice.

30. This Agreement may not be amended or modified except by an agreement, in writing, signed by all the Parties.

31. The provisions of this Agreement are severable, and any invalidity or unenforceability of any one or more of its provisions shall not cause the entire agreement to fail

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

or affect the validity or enforceability of the other provisions herein, which shall be enforced without the severed provision(s) in accordance with the remaining provisions of this Agreement. Each party agrees to take such actions and to execute such additional documents as may be necessary or appropriate to fully effectuate and implement the terms of this Agreement.

32. Mr. Iyoha acknowledges that he was advised to consult with an attorney prior to signing this Agreement, and that the AOC has provided reasonable and sufficient time for this purpose.

33. The Parties shall pay their own expenses, if any, including attorney's fees incurred with the negotiations, preparation, and execution of the Agreement.

34. This Agreement constitutes the entire agreement between Mr. Iyoha and the AOC. There are no other representations or obligations except for those enumerated herein. Mr. Iyoha expressly warrants that he has read and understands this Agreement; that he was advised to consult legal counsel in this matter; that he had the opportunity to have the terms of the Agreement fully explained to him; and he is not executing this Agreement in reliance on any promises, representation, or inducements other than those contained in this Agreement; and that he is executing it voluntarily, free of any duress or coercion.

35. The effective date of this Agreement will be the date the Executive Director formally approves this Agreement, as evidenced by their signature affixed below.

36. The Parties agree that this Agreement shall be enforced in accordance with the Procedural Rules of the Office of Congressional Workplace Rights.

AGREED AND ACCEPTED:

_____          _____
Sunday Iyoha                            Christopher Potter
[Address] 14205 Water Fowl way,         Acting Chief Administrative Officer
[Address] Upper Marlboro, MD 20774      Architect of the Capitol

Digitally signed by Potter, Christopher
Date: 2024.04.17 11:58:19 -04'00'

_____April 15, 2024_____                _____
Date                                    Date

**FOR SETTLEMENT PURPOSES ONLY**
April 15, 2024

_____
Aisha Murray
Associate General Counsel, OGC
Architect of the Capitol

___4/17/2024_____
Date

Approved:

_____
PATRICK N. FINDLAY
Executive Director
Office of Congressional Workplace Rights

_____ Date



*advancing workplace rights, safety and health, and accessibility in the legislative branch*

## Office of Congressional Workplace Rights

April 30, 2024

Sunday Iyoha
14205 Water Fowl Way
Upper Marlboro, MD 20774
siyoha@gmail.com

Angela Freeman, Esq.
Aisha Murray, Esq.
Architect of the Capitol
Office of General Counsel
2nd and D Streets, SW, H2-202
Washington, DC, 20515
Angela.freeman@aoc.gov
Aisha.murray@aoc.gov

Re: Case Nos. 23-AC-50 (CV, RP) and
23-AC-51 (CV, RP)
*Sunday Iyoha v. Architect of the Capitol*

Parties:

Enclosed you will find the settlement agreement in the above-referenced case, which I have approved as Executive Director of the Office of Congressional Workplace Rights (OCWR) pursuant to Section 414 of the Congressional Accountability Act of 1995, *codified at* 2 U.S.C. § 1414. The general requirements for approval of settlement agreements are set forth in Section 9.03(c) of the OCWR Procedural Rules. The parties are responsible for negotiating the terms of the agreement and ensuring compliance with any applicable laws, rules, or regulations.

I note that paragraph 11 of the settlement agreement provides for a payment of $1,000 to the claimant. OCWR will process this payment when the hearing officer approves the claimant's withdrawal in accordance with section 4.10(f) of the OCWR Procedural Rules.

Please note that the OCWR is not a party to the Settlement Agreement, and nothing therein shall be interpreted to bind the OCWR or to render it liable for any purpose. Should there be any allegation that this Settlement Agreement has been violated by either party, the parties should refer to Section 9.03(e) of the OCWR Procedural Rules.

Sincerely,

Martin J. Crane
Executive Director